**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PARIS C. KING-MALONE, | ) | CASE NO. 5:25 CV 1776 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| LOUIS O. KING JR., et al., | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

*Pro se* Plaintiff Paris C. King-Malone filed an Amended Complaint in this action asserting claims under 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act, the Racketeer Influenced Corrupt Organizations ("RICO") Act, and 42 U.S.C. § 1985. She challenges her 2015 Dissolution of Marriage granted by the Cuyahoga County Domestic Relations Court on May 26, 2015, *King v. King*, No. DR-15-356450 (Cuyahoga Cty Dom. Rel. Ct. May 26, 2015) and her 2024 conviction in the Cleveland Municipal Court on misdemeanor charges of criminal trespass, persistent disorderly conduct, and resisting arrest, *City of Cleveland v. King*, No. 2023-CRB-005251 (Cleveland Mun. Ct. Sep. 18, 2024). She names forty-eight Defendants, including Judges, Prosecutors, Court Clerks, Private Attorneys, Municipalities, Private Parties, a Guardian Ad Litem, Public Officials, and Private Security Guards. She asks this Court to declare her dissolution of marriage and her conviction to be void, and enjoin the Defendants from enforcing them. She also seeks monetary damages.

Plaintiff filed an Application to Proceed *In Forma Pauperis*.  (Doc. No. 3).  That Application is granted.

## I.        Background

Plaintiff's pleading is difficult to decipher.  It is largely devoid of facts and composed almost entirely of legal conclusions.  The pleading suggests that she is attacking two state court judgments.  The first judgment she challenges is her dissolution of marriage issued in 2015. *King v. King*, No. DR-15-356450 (Cuyahoga Cty Dom. Rel. Ct. May 26, 2015).  The second judgment is a 2023 Municipal Court conviction on misdemeanor charges of criminal trespass, persistent disorderly conduct, and resisting arrest, *City of Cleveland v. King*, No. 2023-CRB-005251 (Cleveland Mun. Ct. Sep. 18, 2024).

Plaintiff does not provide much information about her dissolution of marriage.  She indicates it was filed in Cuyahoga County.  The Cuyahoga County Domestic Relations Court docket indicates that Plaintiff and her former spouse Louis King, Jr., filed a Petition for Dissolution of Marriage on March 27, 2015. *King v. King*, No. DR-15-356450 (Cuyahoga Cty Dom. Rel. Ct. May 26, 2015).  To petition the court for a dissolution of marriage, both parties must sign and attach to the petition a mutually signed separation agreement that provides for division of all property, and resolves all issues related to child custody and support.  Ohio Revised Code § 3105.63.  Judge Cheryl Karner was assigned to the case.  Judge Karner granted the dissolution of marriage on May 26, 2015.  Over ten years later, on August 6, 2025, Plaintiff filed a Motion to Declare the Judgment to be Void for Lack of Jurisdiction. *Id.*  Because Judge Karner died in 2023, Judge Tanya R. Jones was assigned to the case.  Judge Jones denied the Motion on August 12, 2025.  Plaintiff objects to Judge Jones's assignment to the case claiming her substitution as Judge was not journalized.  (Doc. No. 20 at PageID #: 772).  She claims that

both spouses lived in Summit County, but they filed the case in Cuyahoga County.  Finally, she

claims that she "was incapacitated by mental illness, unrepresented, and without a guardian ad

litem." (Doc. No. 20 at PageID #: 772).   She contends that "[a]ny decree entered against her was

void."  (Doc. No. 20 at PageID #: 772).  She asserts that her ex-husband Louis King "instigated"

the dissolution and attorneys Fine and Knox proceeded with the dissolution "despite lacking

jurisdiction."  (Doc. No. 20 at PageID #: 775).  She indicates that the Guardian ad Litem

Christina Eloff "produced a biased report weaponizing Plaintiff's disability."  (Doc. No. 20 at

PageID #: 776).  She states, without explanation, that Judges Rintala, Stahl, and DiDonato

Heimbaugh enforced the dissolution in Summit County.  She contends her ex-husband's mistress

Robyn Siverd benefitted from the "unlawful proceedings."  (Doc. No. 20 at PageID #: 775).  She

indicates the Stow Municipal Court ordered an eviction that was related to her dissolution of

marriage.

Plaintiff also attacks her 2024 conviction on misdemeanor charges.  The Cleveland

Municipal Court docket indicates misdemeanor charges of criminal trespass, persistent

disorderly conduct, and resisting arrest were filed against Plaintiff on July 7, 2023 for an incident

that took place at University Hospitals on July 3, 2023.  *City of Cleveland v. King*, No. 2023-

CRB-005251 (Cleveland Mun. Ct. Sep. 18, 2024).  The case proceeded to trial.  The jury found

Plaintiff not guilty of criminal trespass, but guilty of persistent disorderly conduct and resisting

arrest.  The Municipal Court sentenced her to one year of active community control sanctions

with counseling.

Plaintiff appealed her conviction.  The Eighth District Court of Appeals provides some

context for the charges.  *City of Cleveland v. King*, No. 114464, 2025 WL 2475869 (Ohio 8 Dist.

App. Ct. Aug. 28, 2025).  On July 3, 2023, University Hospitals police were dispatched to the

main campus emergency room because two people with gunshot wounds were en route. Hospital policy requires that the emergency room go on "soft lockdown" when the emergency room treats gunshot victims.  During a soft lockdown, only patients may enter the emergency room.  This is to make sure no one has followed the ambulance to try to "finish the job."  *Id.* at *2.  Security officers are stationed outside the door to prevent entrance by anyone who is not a patient.  A man approached the door and indicated that he was the father of the gunshot victim. Officers barred his entrance explaining the policy.  Plaintiff's mother was a patient in the emergency room; however, she and the Plaintiff were standing outside of the hospital when the man approached.  They overheard the officer's conversation with the father and began arguing with the officer on the father's behalf.  Plaintiff's mother eventually was permitted to return to the emergency room to get her test results, but Plaintiff, who was not a patient, was told she had to wait outside.  Plaintiff's mother attempted to drag Plaintiff through the door with her but Plaintiff's entrance was blocked by Officer Gill.  Plaintiff became physically aggressive with Officer Gill.  It took several officers to restrain her.  The officers then escorted her to the security office in University Hospitals where her information was obtained and she was released.  A criminal complaint was filed against her four days later on July 7, 2023 in the Cleveland Municipal Court.  She was found not guilty of criminal trespass but guilty of disorderly conduct and resisting arrest.

Plaintiff claims her conviction is void.  She states that Officer Gill does not hold an Ohio Police Officers Training Commission certificate.  She contends he was impersonating a peace officer.  She claims he used force to arrest her which makes her arrest unlawful and void.  She sues Officers Tomm, Sedivy and Huling because they participated in her attest.  She sues UH Employee Brittany White stating she "ratified and supported" her arrest.  She claims Chief

4

Kobak, University Hospital Police Department and University Hospitals Cleveland Medical Center are liable because they employ Gill and ratified his conduct.  She names the City of Cleveland, the Cleveland Police Department and the City of Cleveland Law Department for prosecuting her.  She alleges probation officer Jennifer threatened her with a warrant if she did not report for probation even though she filed an appeal.  She claims her public defenders would not raise her claims of "nullity."  She contends that Supreme Court disciplinary Counsel dismissed her complaints against judges.  She alleges that Judge Cassidy presided over her criminal case, and excluded her service animal.  She claims Court Clerks Buenger, Kurt, and Byrd "obstructed filings and enforced void decrees."  (Doc. No. 20 at PageID #: 776).  She contends the current Cleveland Mayor and the former Cleveland Mayor hired Officer Gill after he resigned from University Hospitals.

Plaintiff asserts claims under 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act, the Racketeer Influenced Corrupt Organizations ("RICO") Act, and 42 U.S.C. § 1985.  She contends generally that the "Defendants violated Plaintiff's Fourteenth Amendment right to due process by enforcing void decrees and convictions."  (Doc. No. 20 at PageID #: 782).  She also generally asserts that the "Defendants intentionally treated Plaintiff, a black, disabled, indigent woman differently from others without rational basis."  (Doc. No. 20 at PageID #: 783).  She asserts claims under Title II of the Americans with Disabilities Act ("ADA") against the City of Cleveland, the Cleveland Municipal Court, "Probation," and Judge Cassidy stating that they denied her accommodation of having her service animal present.  She asserts claims for denial of her Fourth Amendment rights asserting that her arrest was unlawful because the Officers were "impersonators."  She also claims they used excessive force to secure her arrest.  She includes a claim for Malicious Prosecution against Prosecutor Jordan, Prosecutor

Fisher, Officer Gill, University Hospital Employee White and Judge Cassidy. She asserts that Officers Gill, Tomm, Sedivy, and Huling, Judge Cassidy, Probation Supervisor Jennifer and Prosecutors Jordan and Fisher retaliated against her for her mother's protected speech in criticizing the hospital soft lockdown policy. She asserts generally that the "Defendants formed an enterprise and conducted affairs through racketeering: mail/wire fraud, obstruction, extortion, intimidation." (Doc. No. 20 at PageID #: 784). Finally, she states, "All Defendants conspired to deprive Plaintiff of equal protection, motivated by racial and disability animus." (Doc. No. 20 at PageID #: 785). She asks this Court to declare her dissolution of marriage and her criminal conviction to be void, expunge her conviction, and enjoin the state courts from enforcing those judgments. She also seeks monetary damages.

## II.  Standard of Review

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007).

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The factual

allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Twombly*, 550 U.S. at 555. The Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the defendant unlawfully harmed me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id*. In reviewing a Complaint, the Court must construe the pleading in the light most favorable to the Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

## III.     Analysis

As an initial matter, this Court lacks subject matter jurisdiction to declare a state court judgment to be void, and enjoin its enforcement. United States District Courts do not have jurisdiction to overturn state court decisions even if the request to reverse the state court judgment is based on an allegation that the state court's action was unconstitutional. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005). Federal appellate review of state court judgments can only occur in the United States Supreme Court, by appeal or by writ of certiorari. *Id*. Under this principle, generally referred to as the Rooker-Feldman Doctrine, a party losing his case in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States District Court based on the party's claim that the state judgment itself violates his or her federal rights. *Berry v. Schmitt*, 688 F.3d 290, 298-99 (6th Cir. 2012).

The Rooker-Feldman doctrine is based on two United States Supreme Court decisions interpreting 28 U.S.C. § 1257(a). *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44

S.Ct. 149, 68 L.Ed. 362 (1923). This statute was enacted to prevent "end-runs around state court judgments" by requiring litigants seeking review of that judgment to file a writ of certiorari with the United States Supreme Court.  The Rooker-Feldman doctrine is based on the negative inference that, if appellate court review of state judgments is vested in the United States Supreme Court, then such review may not occur in the lower federal courts. *Exxon Mobil Corp.*, 544 U.S. at 283-84; *Kovacic v. Cuyahoga County Dep't of Children and Family Services*, 606 F.3d 301, 308-311 (6th Cir. 2010); *Lawrence v. Welch*, 531 F.3d 364, 369 (6th Cir. 2008).

Rooker-Feldman is a doctrine with narrow application.  It does not bar federal jurisdiction "simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Exxon Mobil Corp.*, 544 U.S. at 293; *Berry*, 688 F.3d 298-99.  It also does not address potential conflicts between federal and state court orders, which fall within the parameters of the doctrines of comity, abstention, and preclusion. *Berry*, 688 F.3d 299.  Instead, the Rooker-Feldman doctrine applies only where a party losing his or her case in state court initiates an action in federal district court complaining of injury caused by a state court judgment itself, and seeks review and rejection of that judgment. *Berry*, 688 F.3d 298-99; *In re Cook*, 551 F.3d 542, 548 (6th Cir. 2009).  To determine whether Rooker-Feldman bars a claim, the Court must look to the "source of the injury the Plaintiff alleges in the federal complaint." *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006); *see Berry*, 688 F.3d at 299; *Kovacic*, 606 F.3d at 310.  If the source of the Plaintiff's injury is the state-court judgment itself, then the Rooker-Feldman doctrine bars the federal claim. *McCormick*, 451 F.3d at 393. "If there is some other source of injury, such as a third party's actions, then the Plaintiff asserts an independent claim." *Id.*; *see Lawrence*, 531 F.3d at 368-69.  In conducting this inquiry, the Court should also consider

the Plaintiff's requested relief.  *Evans v. Cordray*, No. 09–3998, 2011 WL 2149547, at *1 (6th Cir. May 27, 2011).

Here Plaintiff asks this Court to declare the dissolution of marriage to be void and enjoin the enforcement of that judgment.  This Court lacks subject matter jurisdiction to grant that relief.

In addition, Defendants King, Jones, Fine, Know, Eloff, Rintala, Stahl, DiDonato Heimaugh, Siverd, and the Stow Municipal Court are named only in connection with the dissolution of marriage.  Plaintiff has not stated any actual legal claims in connect with her challenge to her dissolution of marriage.  She states that she was denied due process but this claim is premised on the Court also finding that the state court judgment is void.  As stated above, the Court lacks subject matter jurisdiction to make this determination.  She asserts no other cognizable claims against these Defendants.

Finally, Plaintiff's dissolution of marriage was granted in 2015.  Ohio's two year statute of limitations for bodily injury applies to §1983 claims.  *LRL Properties v. Portage Metro Housing Authority*, 55 F. 3d 1097 (6th Cir. 1995).  This action filed ten years later is well beyond the expiration of the statute of limitations.

Furthermore, just as this Court cannot declare a state court civil judgment to be void, it cannot declare a state court criminal conviction to be void in a civil rights action.  To obtain relief from a state court conviction, Plaintiff's sole remedy is a Petition for a Writ of Habeas Corpus.  *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).

Similarly, Plaintiff cannot bypass the habeas corpus remedy by challenging a conviction in a civil rights action that seeks only damages.  Plaintiff cannot obtain damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose

unlawfulness would render a conviction or sentence invalid, unless that the conviction or sentence has been reversed on direct appeal, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  *Heck v. Humphrey*, 512 U.S. 477, 486 (1994).  A claim for damages that calls into question the validity of a conviction or sentence that has not been invalidated is not cognizable in an action for damages.  Therefore, before the Court can entertain a claim for damages, the Court must consider whether a judgment in favor of the Plaintiff would necessarily imply the invalidity of her conviction or sentence.  If it would, the Complaint must be dismissed unless the Plaintiff can demonstrate that the conviction or sentence has already been invalidated.  Plaintiff's claims for damages for denial of due process, unlawful seizure and excessive force all seek damages for events that were integral to Plaintiff's conviction.  In fact, her claim for denial of due process and unlawful seizure are both premised on her assertion that her conviction is void.  Her conviction, however, has not been overturned on appeal or called into question by the issuance of a writ of habeas corpus.  She cannot proceed with these claims for damages.

Plaintiff failed to state a claim of malicious prosecution.  To succeed on a malicious prosecution claim under § 1983 when the claim is premised on a violation of the Fourth Amendment, Plaintiff must plead and prove the following: (1) a criminal prosecution was initiated against her and that the defendant "ma[d]e, influence [d], or participate[d] in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) "as a consequence of a legal proceeding," Plaintiff suffered a "deprivation of liberty," as understood in our Fourth Amendment jurisprudence, apart from the initial seizure; and (4) the criminal proceeding must have been resolved in the Plaintiff's favor.  *Sykes v. Anderson*, 625 F.3d 294, 308-310 (6th Cir. 2010).  The criminal proceedings were not resolved in Plaintiff's favor.  She

10

was convicted of two of the three charges. This also means there was probable cause for her prosecution. She also failed to allege facts to suggest that she was deprived of her liberty after the initial seizure. She was released after her information was obtained by the officers. She has not established the elements for a malicious prosecution claim.

In addition, Plaintiff's equal protection, retaliation, civil RICO, ADA and 42 U.S.C. § 1985 causes of action fail to state a claim upon which relief may be granted. They are stated entirely as legal conclusions with no supporting facts or explanation  Legal conclusions are not sufficient to state a claim upon which relief may be granted. *Iqbal*, 556 U.S. at 678.

Moreover, even if Plaintiff had stated a viable claim that was supported by factual allegations, most, if not all, of the Defendants are not subject to suit. Judges Jones, Rintala, Stahl, Didonato Heimbaugh, Cassidy, Taylor, Steinhauer, Seifert, Sheehan, Forbes, and Keough are absolutely immune from suits for damages based on actions and decision they made in the course of presiding over a case. *Mireles v. Waco*, 502 U.S. 9, 9 (1991); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997). Prosecutors Piatt, Dever, Jordan, Fisher and Bevans Walsh are also absolutely immune for actions taken in the course of presenting the State or City's case. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Pusey v. Youngstown*, 11 F.3d 652, 658 (6th Cir. 1993). Nonjudicial officers, like Court Clerks, clerk's office employees, victim advocates, and Guardian ad Litems whose official duties have an integral relationship with the judicial process, are also entitled to absolute immunity for federal law claims involving their quasi-judicial conduct. *See Foster v. Walsh*, 864 F.2d 416, 417-18 (6th Cir. 1988) (finding clerk of court was entitled to immunity for issuing an arrest warrant); *Kurzawa v. Mueller*, 732 F.2d 1456 (6th Cir. 1984)(finding that a Guardian ad Litem is an integral part of the judicial process and entitled to absolute immunity from the plaintiff's claims). Court Clerks Buenger, Kurt, and Byrd, and

11

Guardian ad Litem Eloff are absolutely immune from suit for damages.  The State of Ohio, its agencies (the Ohio Peace Officer Training Commission) and its officers sued in their official capacities (Dave Yost) are absolutely immune from suit under the Eleventh Amendment.

The Cleveland Police Department, Cleveland Law Department, Cleveland Probation Department and University Hospitals Police Department are not *sui juris* meaning they are not legal entities that can sue or be sued. *Carmichael v. City of Cleveland*, 571 F. App'x 426, 435 (6th Cir. 2014).  The Cleveland Police Department, Law Department and Probation Department are all sub-units of the City of Cleveland.  University Hospitals Police Department is a sub-unit of University Hospitals.  They are not separate legal entities under Ohio law that can be sued.

Similarly, King, Fine, Knox, and Siverd, are private parties, not government actors. Claims may only be brought under 42 U.S.C. § 1983 against state or local governments and their officers or employees.  Private parties are not subject to suit under § 1983 except in rare circumstances which are not applicable here.

University Hospitals is also a private entity, not a municipality or government agency.  It cannot be sued under 42 U.S.C. § 1983.

It is not clear from the Complaint whether the security officers employed by University Hospitals are private parties or state actors for purposes of § 1983.  Under § 1983, Plaintiff must show that she was deprived of a right secured by the Constitution or federal law, by someone acting "under color of state law."  42 U.S.C. § 1983; *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Chapman v. Higbee Co*., 319 F.3d 825, 833 (6th Cir.2003) (en banc); *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir.1992).  Generally, to act under color of state law, the person taking the action must be a state or local government entity or official.  A private person acts under color of state law when his or her conduct is "fairly attributable to the state." *Lugar v.*

*Edmondson Oil Co.*, 457 U.S. 922, 947 (1982).  "The Supreme Court has developed three tests for determining the existence of state action in a particular case: (1) the public function test, (2) the state compulsion test, and (3) the symbiotic relationship or nexus test."  *Chapman*, 319 F.3d at 833 (citing *Wolotsky*, 960 F.2d at 1335). *See West v. Atkins*, 487 U.S. 42, 49-50 (1988) (public function); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 170 (1970) (state compulsion test); *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 721-26 (1961) (symbiotic relationship or nexus test).

The public function test applies here.  "In order for a private actor to be deemed to have acted under color of state law, it is not enough to show that the private actor performed a public function." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 341 (6th Cir. 2006)(citing *Rockwell v. Cape Cod Hosp.*, 26 F.3d 254, 258 (1st Cir.1994)).  Instead, the private party must perform a public function which has traditionally and exclusively been reserved to the State.  *Id.* (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974)).  This test is difficult to satisfy.  *Id.* Many functions have been traditionally performed by governments, but very few have been exclusively reserved to the State.  *Id.* (citing *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1456 (10th Cir.1995); *see also Chapman*, 319 F.3d at 833-34 (explaining that "the public function test has been interpreted narrowly").  "Only functions like holding elections, exercising eminent domain, and operating a company-owned town fall under this category of state action." *Chapman*, 319 F.3d at 833-34 (internal citations omitted).  In short, "a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *West v. Atkins*, 487 U.S. 42, 52 n. 10 (1988).

Private security officers act under the color of state law where they are "endowed by law with plenary police powers such that they are *de facto* police officers."  *Romanski v. Detroit*

13

*Entm't, L.L.C*., 428 F.3d 629, 637 (6th Cir. 2005). Generally, this requires two things: (1) that a government entity grant authority to a private security force; and (2) that the authority include at least one power exclusively reserved for the state. *Id.* Private security guards become state actors, for the purpose of §1983's public function test, only with some sort of state or municipal authorization of plenary police powers. *Id*., *see also Lindsey v. Detroit Entm't, LLC*, 484 F.3d 824, 829–30 (6th Cir. 2007) (casino security guard did not act under color of state law where the guard was not licensed under state law and, thus, did not have plenary arrest authority). In cases where "the private [guards] have some police-like powers but not plenary police authority," including "cases in which a private institution's security employees have been dispatched to protect the institution's interests or enforce its policies," the guards likely will not be state actors. *Romanski*, 428 F.3d at 637-38.

Here, Plaintiff provides very little information about the security officers. She states that Gill is not a certified or trained police officer and is merely a private security officer. She provides no information on Tomm, Sedivy, Huling or Kobak. Plaintiff has not alleged any facts to suggest that the Defendants were endowed with plenary police powers and that they exercised those powers.

Furthermore, even if these officers could be considered to be state actors for purposes of § 1983, the only claims asserted against them are those for use of excessive force and unlawful arrest. As discussed above, both claims are barred by *Heck v. Humphrey*, 512 U.S. 477, 486 (1994). Moreover, Plaintiff fails to allege any facts regarding the incident. She alleges no facts that even suggest what force was used against her or how that force was excessive in light of her behavior. There is no suggestion of how Tomm, Sedivy, Huling, Kobak, or White participated in the incident. Plaintiff fails to state a claim for relief against these Defendants.

Finally, Plaintiff alleges no facts and asserts no viable legal cause of action against King, Fine, Knox, Caligiuri, Yost, University Hospitals, Eloff, Siverd, Jones, Rintala, Stahl, Didonato Heimbaugh, Piatt, Dever, Buenger, City of Cleveland, Probation Officer Jennifer, the Cuyahoga County Public Defender's Office, Sweeney, the Ohio Peace Officer Training Commission, the City of East Cleveland, Shabazz, Morgan, the Stow Municipal Court, Taylor, Summit County, Cuyahoga County, Kurt, Byrd, Jordan, Fisher, Bevan Walsh, Steinhauer Seifert, Sheehan, Forbes, and Keough.  Federal Civil Procedure Rule 8 requires a Plaintiff to submit a short, plain and concise statement of his or her claims and relief.  To meet the minimum notice pleading requirements of Rule 8, the Complaint must give the Defendants fair notice of what the Plaintiff's legal claims are and the factual grounds upon which they rest.  *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 437 (6th Cir. 2008).  This Complaint does not contain sufficient facts regarding these Defendants to suggest what they may have done to connect them to any of the legal claims Plaintiff listed in her Complaint.  Without any indication of their actual role in the incidents described and an actual connection to an asserted legal claim, Plaintiff fails to meet the minimum pleading requirements of Rule 8.  *Iqbal*, 556 U.S. at 678.

## IV.    Conclusion

Accordingly, Plaintiff's Application to Proceed *In Forma Pauperis* (Doc. No. 3) is granted, and this action is dismissed pursuant to 28 U.S.C. §1915(e).  Plaintiff's Motion for temporary restraining order and Motion for preliminary injunction (Doc. No. 4), Motion for temporary restraining order and Injunctive Relief (Doc. No. 16), Motion to expedite ruling on in forma pauperis status and for prompt issuance of summonses and U.S. Marshal Service (Doc. No. 21), Motion for ADA Reasonable Accommodations (Doc. No. 25), Motion for leave to file Second Amended Complaint, Motion to correct defendant name, and Motion to file exhibits

under seal (Doc. No. 29), and Motion for temporary restraining order (Doc. No. 31) are denied.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could

not be taken in good faith.

      IT IS SO ORDERED.

 DATE: November 21, 2025

                        _/s/ John R. Adams_____
                        JOHN R. ADAMS
                        UNITED STATES DISTRICT JUDGE